Joseph L. PENA, Plaintiff–Appellee,

v.

Booth GARDNER; Lawrence Kincheloe; Warden; John Lambert; Amos Reed, Defendants–Appellants.

No. 89–35674.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1991.

Decided Sept. 15, 1992.

As Amended Oct. 9, 1992.

Martin E. Wyckoff, Asst. Atty. Gen., Olympia, Wash., for defendants-appellants.

Michael F. Keyes, Spokane, Wash., for plaintiff-appellee.

Before WRIGHT, THOMPSON and T.G. NELSON, Circuit Judges.

PER CURIAM:

## FACTS

As a result of a growing number of violent prisoner incidents, the Washington State Department of Corrections ("the Department") constructed an Intensive Management Unit ("IMU") at the Washington State Penitentiary ("the penitentiary") designed to be a secure area to house prisoners deemed potentially dangerous or in need of special protection. To maintain security, the Department initiated a policy by which inmates were given a digital rectal probe before transfer to the IMU, or upon determination of a "cause predicate" unrelated to IMU placement.

Pena, an inmate at the penitentiary who was not being transferred to the IMU, was given a digital rectal search that he alleges was conducted without probable cause. He filed a pro se complaint in the district court against Washington state officials[1] under 42 U.S.C. § 1983. In his complaint he included pendent state law claims.

The state officials moved to dismiss Pena's complaint under Rule 12(b)(6) and on the grounds that they were entitled to qualified immunity and immunity under the eleventh amendment. The district court stayed proceedings pending disposition of a related case, *Tribble v. Gardner*, No. C–86–234–JLQ (E.D.Wash.). In the related *Tribble* case, the district court, in ruling on the defendants' motion for summary judgment, rejected their qualified immunity defense. After that decision was affirmed on appeal, *Tribble v. Gardner*, 860 F.2d 321 (9th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989), the district court in the present case denied the defendants' motion to dismiss and this appeal followed.

We vacate the district court's order denying the defendants' motion to dismiss, because Pena's complaint, unadorned with facts from the related *Tribble* case, does not contain facts sufficient to state a claim under 42 U.S.C. § 1983. Without sufficient facts to support that claim, consideration of the questions of the defendants' entitlement to qualified immunity, the applicability of the eleventh amendment, and how the state law claims should be treated is premature.

We remand with instructions to the district court to dismiss Pena's complaint with leave to amend.

## DISCUSSION

### A. Qualified Immunity

Before deciding whether the defendants are entitled to qualified immunity, we first look to Pena's complaint to see if he has alleged facts sufficient to state a claim under 42 U.S.C. § 1983.

#### 1. *Sufficiency of the Complaint*

Pena's complaint presents only generalized and vague allegations that he was subjected to a digital rectal search without probable cause. As such, his complaint fails to state a section 1983 claim.

Ordinarily, a pro se complaint will be liberally construed and will be dismissed only if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). However, "a liberal interpretation of a [pro se] civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

■ In ruling on the defendants' motion to dismiss, the district court augmented Pena's complaint with facts presented in the *Tribble* case. That case involved the same search policy, the same penitentiary, and some of the same defendants.[2] The district court held that because there were sufficient facts presented in Tribble's case to survive summary judgment, those facts could be considered in ruling on the motion to dismiss Pena's complaint.[3] By this hold-

---

1. The officials are: Booth Gardner, Governor of the State of Washington; Amos Reed, former Secretary of the Department of Corrections; Lawrence Kincheloe, former Superintendent of the Washington State Penitentiary; John Lambert and Richard Morgan, Captains at the Washington State Penitentiary.

2. Booth Gardner, Amos Reed and Lawrence Kincheloe were defendants in both the *Tribble* case and this case. John Lambert and Richard

Morgan were not defendants in *Tribble*, but they are defendants in this case.

3. The record in *Tribble* included the following evidence: (1) a record of testimony in a related case in which a penologist stated that he observed videotapes of rectal searches which showed that no effort was made to search an inmate's clothing, other body cavities, hair or hands; (2) an affidavit of an inmate stating that despite possessing contraband tobacco in the

ing, the district court supplied "essential elements of [Pena's] claim that were not initially pled." *See Ivey,* 673 F.2d at 268. The court erred in so doing. Without those facts, Pena's complaint fails to state a claim under section 1983. His complaint should be dismissed with leave to amend.

### 2. *Offensive Collateral Estoppel*

■ The district court applied offensive collateral estoppel from the *Tribble* case to deny the defendants qualified immunity in Pena's case. The district court held that because the state defendants in *Tribble* had litigated and lost their qualified immunity defense, those of them who were also defendants in this case were collaterally estopped from asserting qualified immunity as a defense.

■ "[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979). Offensive collateral estoppel may be used when: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *See generally* Charles A. Wright, LAW OF FEDERAL COURTS 682–85 (4th ed. 1983). *See also Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. at 650.

*Tribble* arose on an appeal from the denial of summary judgment. We affirmed, holding that the facts alleged were suffi-

cient to allow Tribble a trial on the merits, but noted that the defendants might still be entitled to qualified immunity depending on what findings eventually were made by the trier of fact. *Tribble,* 860 F.2d at 328.

This case arises on an appeal from the denial of the defendants' motion to dismiss. Pena has not alleged the same facts as Tribble. Whether Pena, like Tribble, will be entitled to a trial on the merits on the defendants' qualified immunity defense cannot be determined from the present state of the record. We conclude that the district court erred in applying offensive collateral estoppel from the *Tribble* case to this case.[4]

### B. Eleventh Amendment Immunity

#### 1. *Section 1983 Action*

■ In support of their motion to dismiss, the defendants also raised the defense of the eleventh amendment. This is a jurisdictional question. *Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974).

■ The eleventh amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355; *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).

■ It is thus clear that the eleventh amendment will bar Pena from bringing his claims in federal court against the state officials in their *official* capacities. It will not, however, bar claims against the state officials in their *personal* capacities. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116

---

pocket of his overalls, he was subjected only to a rectal search prior to entry to the IMU; (3) evidence that prison guards threatened inmates with a rectal search to effect compliance with regulations; and (4) evidence that Tribble personally was subjected to an unnecessary search because prison officials knew he had just come from the hospital where x-rays showed he had no contraband concealed in his rectum. *Tribble,* 860 F.2d at 326.

**4.** The district court also applied what it referred to as "the *Tribble* precedent" to deny the qualified immunity defense to defendants in this case who were not also defendants in *Tribble.* Again, it did so by attributing to Pena's complaint facts which had been asserted only in *Tribble.*

L.Ed.2d 301 (1991); *DeNieva v. Reyes*, 966 F.2d 480, 483–84 (9th Cir.1992).[5]

■ The Supreme Court in *Hafer* described the difference between official capacity and personal capacity suits. "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer*, — U.S. at —, 112 S.Ct. at 362. An official sued in his official capacity has the same immunity as the state, and is entitled to eleventh amendment immunity. *Id.* at —, 112 S.Ct. at 361. An official sued in his personal capacity, although deprived of eleventh amendment immunity, may assert a defense of qualified immunity. *Id.* at —, 112 S.Ct. at 362.

> Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." [*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)]. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.* at 166–167 [105 S.Ct. at 3105–3106].

*Id.*

### 2. *Pendent State Claims*

■ The district court denied the defendants' motion to dismiss Pena's pendent state claims. The defendants also asserted the eleventh amendment as a bar to these claims.

■ A state law claim pendent to a federal claim that survives eleventh amendment analysis must itself be subjected to eleventh amendment scrutiny. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117–23, 104 S.Ct. 900, 917–20, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). The defendants, apparently conceding they were sued in their individual capacities, argue that *Pennhurst II* stands for the proposition that individual capacity claims against officials who are alleged to have violated state law are barred by the eleventh amendment. We disagree. In *Pennhurst II*, the Supreme Court held that the eleventh amendment bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their *official* capacities alleging a violation of state law. *Id.* at 106, 104 S.Ct. at 910. The court distinguished the situation where a plaintiff brings suit against a state official acting in his *individual* capacity. *Id.* at 111 n. 21, 104 S.Ct. at 913 n. 21.

We have interpreted *Pennhurst II* to mean that "the eleventh amendment does not bar a suit seeking damages against a state official personally." *Demery v. Kupperman*, 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). *See also Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1350 (9th Cir.1981) (the eleventh amendment "bar is not automatically applicable to a suit brought against a state official in his individual capacity alleging the commission by him of a common law tort in the course of his employment"), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); Paul M. Bator et al., *Hart and Wechsler's The Federal Courts and The Federal System* 1203 (3d ed. 1988) (*Pennhurst II* appears to permit a suit under state law against a state official for damages to be

---

5. The eleventh amendment would not bar a federal court action seeking prospective injunctive relief under federal law, even if the action were brought against the state or its officials acting in their official capacities. *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356. Pena did not request injunctive relief in his original complaint. Because Washington has withdrawn its digital rectal search policy, an action for injunctive relief may now be moot. *Tribble*, 860 F.2d at 325 n. 7.

paid by the officer personally rather than by the state).[6]

We conclude that the eleventh amendment will not bar pendent state claims by Pena against state officials acting in their individual capacities.

## CONCLUSION

We vacate the order denying the defendants' motion to dismiss, and remand to the district court with instructions to dismiss Pena's complaint with leave to amend. To survive a motion to dismiss, Pena must allege with greater specificity the particular conduct he contends caused a violation of his civil rights under 42 U.S.C. § 1983. When Pena has amended his complaint, the district court can determine whether he has alleged facts sufficient to state a section 1983 claim, whether the defendants are entitled to eleventh amendment immunity or qualified immunity, and how it should treat the pendent state claims.

VACATED and REMANDED.

T.G. NELSON, Circuit Judge, specially concurring.

I write separately only to emphasize that courts must still analyze the specifics of the conduct involved when determining whether a suit is against an official in his or her "official" or "individual" capacity. Our quote of the cryptic statement from *Hafer*, that "the phrase 'acting in their official' capacities can best be understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury" could be understood as meaning that a glance at the caption of the case is all that is required. This is too narrow a view, I believe.

A shorthand analysis of "official" versus "individual" capacity camouflages the real question. A state official acting within the scope of her office, as Ms. Hafer was, is always a state official. The issue to be addressed is not whether the officer acted in her official capacity, but whether she is individually liable for her conduct. The answer to this question depends on the quality of her acts, not whether she did them within the limits of her state-granted authority. If her acts deprived the plaintiff of civil rights under federal law, then she is liable for the consequences, absent some personal immunity defense.

In my view, Supreme Court and Ninth Circuit authority support an analysis of "individual capacity" as follows: An official is being sued in his individual capacity if his action was beyond the scope of his designated power (i.e., ultra vires). *Pennhurst II*, 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11, *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982). Action is ultra vires in the following three circumstances: (1) if the official's act is beyond the limits of his statutorily designated authority (*Treasure Salvors*, 458 U.S. at 697, 102 S.Ct. at 3320; *Capitol Industries–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1120 (9th Cir.) *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982)); (2) if the official is acting pursuant to an unconstitutional statute (*Ex parte Young*[1], 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908); *Capitol Industries–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1120) (9th Cir.1982); and (3) if the official himself commits an unconstitutional act or deprives another of a federal right (*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683,

6.  In *Central Reserve Life of North America Insurance Co. v. Struve*, 852 F.2d 1158 (9th Cir. 1988), we stated in dicta that the eleventh amendment "bar[s] claims in federal court asserted against state officers based on alleged violations of *state* law." *Id.* at 1161. Although this statement is undoubtedly true as to state officials acting in their official capacities, it is not true for individual capacity claims. The defendants cannot rely upon this ambiguous dicta to support their argument that *Pennhurst*

*II* prohibits suits for violation of state law against state officials acting in their individual capacities.

1.  Theoretically, in an *Ex parte Young* ultra vires scenario, an official can be sued in his official capacity if injunctive relief is sought from the state, and in his individual capacity if relief is sought from the officer personally.

1687, 40 L.Ed.2d 90 (1974); *see generally Hafer,* —— U.S. at ——, 112 S.Ct. at 362; *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54).

Neither the Ninth Circuit nor this case originated the official capacity versus individual capacity labels we all now use. To the extent that their use here may serve to confuse those who read this case, I suggest only that an analysis of the substance of the defendant's acts is still required, not merely a look at the caption of the case to see how the defendant is named.