UNITED STATES of America, ex. rel. W. Lee MCVEY, Plaintiff,

v.

The BOARD OF REGENTS OF the UNIVERSITY OF CALIFORNIA, dba Lawrence Livermore National Laboratory; and David K. Johnson, Defendants.

No. C–98–4780.

United States District Court, N.D. California.

March 14, 2001.

Jeremy L. Friedman, Oakland, CA, for W. Lee McVey.

Malcolm A. Heinicke, Munger Tolles & Olson, San Francisco, CA, Gabriela B. Odell, Office of Laboratory Counsel, Lawrence Livermore Natl Laboratory, Livermore, CA, for Bd. of Regents of University of California, David K. Johnson.

### MEMORANDUM AND ORDER

PATEL, Chief Judge.

Plaintiff/relator W. Lee McVey instituted this *qui tam* action against defendants Board of Regents of the University of California ("Board") dba Lawrence Livermore National Laboratory ("Livermore") and David K. Johnson ("Johnson") (collectively "defendants"), alleging violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and 42 U.S.C. § 1983 ("Section 1983"). On September 5, 2000, the Court dismissed with prejudice McVey's FCA claim against the Board pursuant to *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).[1] Remaining in the case are McVey's FCA claims against Johnson, and retaliation claims under the FCA and Section 1983 against both the Board and Johnson. McVey has stipulated that he seeks only prospective relief for the retaliation claims. Defendants bring this motion to dismiss the remaining claims. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

### BACKGROUND

Livermore is a federally-funded research and development facility under the auspices of the United States Department of Energy ("DOE"). Livermore is operated by the Board pursuant to a cost-reimbursement contract with DOE. Under the contract, the Board bills DOE for the costs incurred for the benefit of DOE research, plus an additional fee. Under federal regulations governing the contract, Livermore may only bill DOE for costs that are "reasonable," "allowable" and in conformance with contract terms.

In 1988, Livermore suffered a three-day power outage. Concerned with the impact of such a massive power failure on a critical research facility, Congress appropriated funds to upgrade the reliability and safety of Livermore's power system. Johnson, in his position as Division Leader at Livermore's Plant Engineering in the Electric Utilities Division, headed the upgrade project, known as the Electric Power System Replacements and Upgrade Line Item Project ("EPSRU"). In 1990, Livermore hired McVey to serve as Electric Utility System Manager for its Electrical Utilities Division. In that position, McVey was responsible for the operation and maintenance of Livermore's electrical utilities system. McVey worked on EPSRU under Johnson's direct supervision.

McVey alleges that between 1991 and the present, Livermore, through Johnson, incurred and billed to DOE costs that Johnson knew or should have known were unjustified and unnecessary. Among the costs were those for installation of a differential fast-transfer relay system, modifications to prevent the accidental tripping of circuit breakers, modifications and design of a 115kV ring-bus substation, modifications of a battery failure protection system, purchase of a new software system and travel costs.

McVey avers that he complained directly to Johnson about these expenses, and when Johnson failed to take action, reported his concerns to Johnson's supervisor, Charles Cain ("Cain"). When Cain did not

---

1. The claim was dismissed without prejudice as to the United States.

do enough to satisfy McVey, McVey contacted the DOE Inspector General. The Inspector General ordered an external review of the fast-transfer relay system.[2] McVey continued his internal complaints and also contacted the United States Attorney's office. McVey claims that due to his whistleblower actions, he suffered retaliatory action from Livermore and Johnson, including transfer to the Maintenance Engineering and Production Control Division, a purported demotion, and denial of the opportunity for upward mobility and for future income gains.

In December 1998, McVey instituted this action under seal. On April 20, 1999, the United States Government decided not to intervene. On April 21, 1999, the court ordered the complaint unsealed and served on defendants.

*DISCUSSION*

McVey alleges that: (1) Johnson violated the FCA through falsely charging the federal government for unnecessary and wasteful engineering modifications; and (2) Johnson and the Board violated the FCA's whistleblower provision, 31 U.S.C. § 3730(h), and Section 1983 by taking employment actions aimed at chilling McVey's First Amendment right to free speech and punishing him for raising spending concerns. McVey seeks monetary and punitive damages, back pay and injunctive relief reinstating him to his former position with appropriate promotions and salary increases.

Defendants seek to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(1) and failure to state a claim pursuant to F.R.C.P. 12(b)(6). Defendants contend that McVey cannot bring retaliation causes of action against the Board or Johnson as the Board is a state agency and Johnson a state official and therefore both are immune from this type of action under the Eleventh Amendment. Johnson also individually argues that the FCA claim should be dismissed because no fraud took place; rather, he and McVey merely disagree regarding engineering decisions. Johnson also seeks dismissal of the FCA claim based on failure to plead fraud allegations with sufficient particularity in violation of F.R.C.P. 9(b).

I. *Legal Standard*

A. *Federal Rule of Civil Procedure 12(b)(1)*

F.R.C.P. 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either facially or factually. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). In considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept all of plaintiff's factual allegations as true. *See Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1996).

B. *Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *See* Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th

**2.** The review eventually found that the fast-transfer relay system was economically unjustified.

Cir.1986). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *See NL Ind., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## II. *Retaliation Claims*

### A. *False Claims Act*

McVey seeks relief under the FCA, which provides in relevant part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section ... shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay and compensation for any special damages sustained as a result of the discrimination including litigation and reasonable attorneys' fees.

31 U.S.C. § 3730(h).

█ McVey cannot maintain an FCA-based retaliation claim against the Board after the Supreme Court's decision in *Stevens. See Bhatnagar v. Kiewit Pacific Co.,* 2000 WL 1456940, *5 (N.D.Cal.2000). The retaliation provision of the FCA falls within the Supreme Court's broad conclusion in *Stevens* that the FCA does not subject states to liability. *See Stevens,* 120 S.Ct. at 1871 (holding "that a private individual has standing to bring suit in federal court on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729–3733, but that the False Claims Act does not subject a State (or state agency) to liability in such actions"); *Bhatnagar,* 2000 WL 1456940 at *5.

█ Nor can McVey maintain an FCA retaliation claim against Johnson as an individual. Section 3730(h) provides for an action against an "employer." The Board, not Johnson, is the employer for the purpose of this provision. *See Clemes v. Del Norte Cty. United Sch. Dist.,* 1996 WL 331096, *7, n. 6 (N.D.Cal.1996) (dismissing claim without leave to amend to include defendants in their individual capacity because "[School] District, not the individual defendants, is the employer for the purpose of [31 U.S.C. § 3730(h) ]"); *U.S. ex rel. Lamar v. Burke,* 894 F.Supp. 1345 (E.D.Mo.1995) (holding "employer" as used in 31 U.S.C. § 3730(h) does not extend to corporate supervisors); cf. *Miller v. Maxwell's Int'l. Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (finding that the term "employer" used in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., does not include individual defendants for civil liability purposes even though the term "agent" is used in the definition). Therefore, McVey's second cause of action must be dismissed.

### B. *42 U.S.C. § 1983*

█ McVey cannot maintain a Section 1983 damages action against the Board because the Board is a state agency. *See Stivers v. Pierce,* 71 F.3d 732, 749 (9th Cir.1995) ("The Eleventh Amendment prohibits suits against a state, and section 1983 does not abrogate this immunity.... As an agency of the state, the Board itself is shielded from liability under the Eleventh Amendment"). Similarly, a state official cannot be sued in his official capacity for damages pursuant to Section 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (holding state official is not amenable to suit under Section 1983 because "a suit against a state official in

his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device") (citation omitted); *Pena v. Gardner,* 976 F.2d 469, 472 (9th Cir.1992) (holding "Eleventh Amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity").

 This does not mean McVey is foreclosed any opportunity for relief. While a damages action cannot lie against the Board or Johnson in his official capacity, the Eleventh Amendment does "not bar a federal court action seeking prospective injunctive relief under federal law, even if the action [is] brought against the state or its officials acting in their official capacity." *Pena,* 976 F.2d at 473 n. 5. Reinstatement claims constitute prospective injunctive relief. *See Doe v. Lawrence Livermore Nat'l. Lab.,* 131 F.3d 836, 841 (9th Cir. 1997) (reasoning that because "[r]einstatement would not compensate [plaintiff] for lost wages or lost time ... [but] would simply prevent the prospective violation of [plaintiff's] rights which would result from denying him employment in the future[,]" *id.* at 841, "reinstatement is a legitimate request for prospective injunctive relief." *Id.* at 842). Therefore, McVey may seek

reinstatement from the Board and from Johnson in his official capacity. *See Cerrato v. San Francisco Comm. Coll. Dist.,* 26 F.3d 968, 972–73 (9th Cir.1994).[3]

 McVey may also prosecute his Section 1983 action against Johnson in Johnson's personal capacity. The Eleventh Amendment does not bar federal claims seeking damages against a state official acting in his personal capacity. *See Alden v. Maine,* 527 U.S. 706, 756–57, 119 S.Ct. 2240, 2267–68, 144 L.Ed.2d 636 (1999) (stating "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally"); *Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (holding "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983"). A Section 1983 plaintiff may bring such an action so long as the plaintiff alleges a connection between the official and the allegedly illegal action. *See Rounds v. Oregon State Bd. of Higher Ed.,* 166 F.3d 1032, 1036 n. 2; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). McVey does so here, as Johnson is the official who took the allegedly retaliatory actions against McVey.

 Johnson argues that as McVey nowhere specifies that he is suing Johnson in Johnson's individual capacity, McVey cannot proceed with his Section 1983 claim against him personally.[4] Johnson is mis-

---

**3.** Defendants also argue that McVey's retaliation claims under which he seeks reinstatement to his position as Electric Utility System Manager are now moot as McVey no longer works for the Board and does not state in his complaint that he would return if reinstated. For the purposes of this motion, the court must accept McVey's allegations as true. *See*

*NL Ind.,* 792 F.2d at 898. McVey's intention to return or lack thereof is more properly a matter for discovery.

**4.** In his complaint, McVey merely states that Johnson was Division Leader at Livermore's Plant Engineering in the Electric Utilities Division, the program manager of EPSRU and

taken. When a Section 1983 complaint is ambiguous as to the capacity in which a state official is being sued, as is the case here, the court presumes that he is being sued in his personal capacity. *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (noting court "presume[s] that officials necessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued"); *Shoshone–Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir.1994) (stating "[w]here state officials are named in a complaint which seeks damages under Section 1983, it is presumed that the officials are being sued in their individual capacities. Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred") (citation omitted). McVey may prosecute this claim.[5]

### III. *False Claims*

 McVey admits that in light of *Stevens*, he cannot maintain an action under the FCA against Johnson in his official capacity. This is certainly the case. Given the fact that the "False Claims Act does not subject a State (or state agency) to liability in such actions," *Stevens*, 120 S.Ct. at 1871, and that an action against a state official in his official capacity "is not a suit against the official but rather is a suit against the State itself," *Will*, 491 U.S. at 71, 109 S.Ct. 2304, McVey may not sue Johnson in his official capacity under the

FCA. In an attempt to save this claim, McVey therefore attempts to characterize his FCA claim against Johnson as one against Johnson in his personal capacity.

Johnson contends that the FCA does not provide for actions against state officials in their individual capacities. Johnson notes that every case McVey cites to bolster his prosecution of the action against Johnson in his individual capacity is a Section 1983 case; none regard the FCA. Johnson also points to the different motivations behind Congressional passage of Section 1983 as opposed to the FCA. Section 1983 was passed in an effort to prevent civil rights abuses by state officials. *See Hafer v. Melo*, 502 U.S. 21, 28, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991) (stating "Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it"). Therefore, permitting state officials to escape personal liability would eviscerate the statute. By contrast, Congress enacted the FCA to try to stop the massive frauds perpetrated against the federal government by large private contractors during the Civil War. *See Stevens*, 120 S.Ct. at 1867. Thus, Johnson argues, private companies are the proper target, not state officials.

The court agrees generally with Johnson. The clear intent of the Supreme Court, as expressed in *Stevens*, is that unless Congress explicitly indicates in a statute that it intends to abrogate state

McVey's immediate supervisor from 1990 to 1997. McVey also states that Johnson "was, at all times relevant to this action, the agent, employee, representing partner or joint venturer of the remaining defendants and was acting within the course and scope of that relationship." The case caption states only Johnson's name with no reference to the capacity in which he is being sued.

5. In his opposition to this motion, McVey claims that, in addition to reinstatement, he seeks correction of his employment records. Pl.'s Mem.Opp. Dismiss at 16. This mode of relief is found nowhere in his complaint. Therefore, the court will not consider it in the context of the retaliation claim under either the FCA or Section 1983.

sovereign immunity, an individual may not sue the state or a state official under that statute in federal court. *See Stevens,* 120 S.Ct. at 1870. Congress expressed no such intent in the FCA and thus neither a state nor a state official may constitutionally be required to defend such an action. *Id.* at 1871.[6]

McVey offers no authority that even suggests the court should permit him to make an end-run around the state sovereign immunity guaranteed by the Supreme Court in *Stevens.* In fact, after exhaustive research the only reference the court could find to an FCA action against a state official in his personal capacity was a passing allusion in a case from the Southern District of Indiana, which clearly has no precedential value here. *See U.S. ex rel. Coleman v. State,* 2000 WL 1357791 (S.D.Ind.2000) (accepting in theory that relator may prosecute claim against official in personal capacity, but granting defendant's summary judgment motion based on other flaws in subject matter jurisdiction). This court will follow the dictates of the Supreme Court and adhere closely to the statute in question. Under the FCA, a state official is immune from suit for actions taken in his position, no matter what nomenclature is given the action. Johnson is being sued for actions taken within the scope of his employment as a state official. McVey has offered no evidence that Johnson was acting outside his official capacity during the incidents in question; allegations that Johnson abused his authority do not suffice. McVey may not proceed against Johnson in Johnson's personal capacity.

Because the court holds that McVey may not proceed with his FCA claim, it need not address Johnson's contention that the complaint runs afoul of F.R.C.P. 9(b).

---

**6.** Of course, this holding does not leave the federal government without alternative—it

*CONCLUSION*

For the reasons set forth above, the court GRANTS defendants' motion to dismiss as to plaintiff's first and second claims. The court DENIES defendants' motion to dismiss as to plaintiff's third claim insofar as the claim seeks 1) prospective relief from the Board and from Johnson in his official capacity; and 2) damages from Johnson in his individual capacity. The court GRANTS the motion as to the remainder of the third claim.

IT IS SO ORDERED.

could prosecute the state official for illegally lining his pockets.