Thornell BROWN, Plaintiff,

v.

**J. GROVE, et al., Defendants.**

**No. CV 06–3110 SVW (PJWx).**

United States District Court, C.D. California, Western Division.

July 16, 2009.

Thornell Brown, Tehachapi, CA, pro se.

Adam Logan Marcotte, Julie A. Malone, Mitchell Elliott Rishe, CAAG-Office of Attorney General, Los Angeles, CA, for Defendants.

ORDER ACCEPTING FINAL REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

STEPHEN V. WILSON, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the pleadings filed in support of and in opposition to Defendants' Motion to Dismiss the Complaint, the records in the file, and the Final Report and Recommendation of the United States Magistrate Judge. The Court has read and considered the objections to the Final Report and adopts it as its own findings and conclusions.

The Court writes separately simply to note that in the context of a claim for retaliation in violation of the First Amendment, the law is somewhat unclear as to what extent the Plaintiff must allege a "chilling effect." In *Rhodes v. Robinson*, 408 F.3d 559, 562 n. 11 (9th Cir.2005), the Ninth Circuit suggested that an allegation of a chilling effect was not strictly required under all circumstances. The court said that if the plaintiff had not alleged a chilling effect (which he had), then "perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." *Id.* This language from the court's decision appears to open the door to the possibility than an allegation of harm that is "more than minimal" would be sufficient. This of course begs the question of how much harm is "more than minimal."

Because the above-quoted language from *Rhodes* is arguably dicta, however, and the law in this regard is relatively unsettled, the Court finds that the better course of action is to grant Defendants' Motion without prejudice so that Plaintiff can file an amended complaint to allege the required "chilling effect." Plaintiff shall have file an amended complaint no later than thirty (30) days after the date of this order.

Accordingly the Court enters the following order:

1. Defendants' Motion to Dismiss the official capacity claims is GRANTED, with prejudice.

2. Defendants' Motion to Dismiss the Complaint on qualified immunity grounds is DENIED.

3. Defendants' Motion to Dismiss the Complaint for failure to exhaust is DENIED.

4. Defendants' Motion to Dismiss the claims for retaliation is GRANTED, without prejudice to amend.

5. Defendants' Motion to Dismiss Plaintiff's excessive force and deliberate indifference claims is DENIED.

6. Defendants' Motion to Dismiss the state tort claims is GRANTED, with prejudice.

IT IS SO ORDERED.

FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS COMPLAINT

PATRICK J. WALSH, United States Magistrate Judge.

This Final Report and Recommendation is submitted to the Hon. Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that Defendants' motion to dismiss be GRANTED in part and DENIED in part.

## I.

### SUMMARY OF FACTS

Plaintiff is a prisoner who is suing numerous state prison guards and prison employees, alleging that they violated his constitutional rights when they forced him into a cell with another prisoner whom Plaintiff did not want to be housed with. Plaintiff complains that he was injured during the transfer and that Defendants denied his request for medical care. (Complaint at ¶¶ 28, 33–34.) He also alleges that, thereafter, Defendants placed him on "triangle mechanical restraint status," meaning that every time he was moved in the following ten days, he was fitted with a mechanical restraint. (Complaint at ¶ 32.)

## II.

### ANALYSIS

#### A. *Standard of Review*

In ruling on a motion to dismiss, the Court accepts Plaintiff's factual allegations as true and views all inferences in a light most favorable to Plaintiff. *See Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2001). Neither conclusory allegations of law nor unwarranted inferences, however, are sufficient to defeat a motion to dismiss for failure to state a claim. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 923 (9th Cir.2001). As a *pro se* litigant, Plaintiff is entitled to have his Complaint liberally construed. *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992). Plaintiff, however, bears the responsibility for articulating his claims clearly and supplying supporting facts for each claim sufficient for review. *Id.*

Generally, the Court considers only the Complaint in determining the propriety of a dismissal motion. *Cooper v. Pickett,* 137 F.3d 616, 622 (9th Cir.1997). Nevertheless, in a motion to dismiss for failure to exhaust, the Court may look beyond the pleadings to evidence relating to exhaustion. *See, e.g., Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir.1988). In this case, the Court has considered a declaration attached to Defendants' motion, setting forth that Plaintiff has not exhausted his administrative remedies, and exhibits that Plaintiff attached to his Complaint and to his opposition to the motion to dismiss.

#### B. *Plaintiff's Official Capacity Claims Are Not Cognizable*

 Plaintiff has sued Defendants in their official capacities for money damages. This, he cannot do. A judgment against Defendants in their official capacities would be tantamount to a judgment

against the State of California, which is immune from suit in federal court for money damages under the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Further, under the Supreme Court's holdings in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and others, Plaintiff cannot sue state employees in their official capacities for money damages under § 1983 because states are not "persons" under § 1983. For these reasons, Plaintiff's official capacity claims against all Defendants are subject to dismissal.[1]

### C. Defendants' Qualified Immunity Defense Is Denied

Defendants have moved to dismiss the Complaint in its entirety on the ground that they are entitled to qualified immunity because they did not violate clearly established federal law and, even if they did, they reasonably believed that their conduct was lawful. As set forth below, under Plaintiff's version of the facts, which the Court is bound to accept at this stage of the proceedings, Defendants are not entitled to qualified immunity because the law they allegedly violated was clearly established when they violated it and they could not have reasonably believed that their conduct was lawful.

■ Qualified immunity shields government employees from liability for actions they take in their capacities as state workers. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To be protected under qualified immunity, a government employee must show that the right the plaintiff complains of was not clearly established at the time the defendants acted or, assuming that it was clearly established, that the defendants reasonably believed that their conduct was lawful. *Id.* at 201–02, 121 S.Ct. 2151.

In arguing for the application of qualified immunity, Defendants' set forth their version of what happened and contend that their conduct did not violate clearly established law. (Motion at 3–7.) In a motion to dismiss, however, the Court accepts Plaintiff's version of the facts and any inferences that can be drawn from it and ignores Defendants' version. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). Applying this standard, Defendants' argument falls short.

■ Plaintiff contends that Defendants used excessive force—a mechanical restraint device-to punish him for being defiant and ignored his requests for medical treatment after they hurt him with it. Applying restraints, like handcuffs, too tightly can constitute excessive force. *See, e.g., Wall v. County of Orange,* 364 F.3d 1107, 1112 (9th Cir.2004); *LaLonde v. County of Riverside,* 204 F.3d 947, 960 (9th Cir.2000). Furthermore, before prison guards can punish a prisoner, they are required to provide notice and a hearing. *Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Finally, a prison guard's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment proscription against cruel and unusual punishment. *Farmer v. Brennan,* 511 U.S. 825, 837–41, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

---

1. The Court notes that Plaintiff has not sued for prospective declaratory or injunctive relief, which is not barred under the Eleventh Amendment. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (finding suits for prospective injunctive relief against state officials not barred by Eleventh Amendment). Though Plaintiff states at page 42 of the Complaint that he is seeking a "declaration" that Defendants' conduct violated his rights, that is not the same as prospective declaratory relief.

These rights were all clearly established in 2003. Assuming, as the Court must, that Defendants violated these rights, they are not entitled to qualified immunity.

Defendants argue in the alternative that, even if their conduct did violate clearly established rights, they are still entitled to qualified immunity because they reasonably believed that their conduct was lawful. (Motion at 6–7.) They point out that Plaintiff never told them that he and inmate Pettis were enemies or rivals, which would have signaled to the guards that they should not place Plaintiff in the same cell with Pettis. They also note that Plaintiff set out in the Complaint that the guards may have misconstrued his statements as an act of defiance, "thereby recognizing the possibility the [D]efendants reasonably believed that [P]laintiff could become violent during the cell move." (Motion at 7.) They argue that, "because restraints are authorized to prevent acts of violence, [D]efendants reasonably believed that their actions were lawful." (Motion at 7.)

The problem with Defendants' argument is twofold. First, it turns on facts that are not contained in the Complaint and inferences that Defendants want the Court to draw from those facts, which the Court is not at liberty to do in a motion to dismiss. *See Lee*, 250 F.3d at 688 (reversing district court's dismissal order based on facts proffered by the defendants in their motion and attached affidavits). For example, Defendants point out that Plaintiff states in the Complaint that the guards may have misconstrued his resistance as an act of defiance. Defendants then urge the Court to infer that this "possibly" led Defendants "to believe" that Plaintiff may become violent during the cell move and, therefore, they were authorized to use force. (Motion at 7.) There is no basis for this inference.

As the Ninth Circuit Court of Appeals made clear just last year, these fact-intensive issues pertinent to a qualified immunity defense, particularly whether the defendant's conduct was reasonable, are better left to summary judgment. *See Hydrick v. Hunter (Hydrick II)*, 500 F.3d 978, 985–86, 1001 (9th Cir.2007). Focusing on the facts as Plaintiff has alleged them in the Complaint, the Court concludes that Defendants have not established that they could have reasonably, but mistakenly, believed that their conduct did not violate clearly established constitutional rights. It was completely unreasonable for prison guards to believe in 2003 that they could employ excessive force to punish a prisoner, that they could punish a prisoner without notice and a hearing, or that they could deny a prisoner medical care for serious medical needs.

The second problem with Defendants' qualified immunity defense is that the rights they have allegedly violated, i.e., the right to be free from cruel and unusual punishment, the right to notice and a hearing before being punished, etc., have been recognized for quite some time as clearly established constitutional rights. Qualified immunity ordinarily does not apply where a defendant violates clearly established law, since a reasonably competent public official should know the law governing his conduct. *Id.* at 1001.

For these reasons, Defendants argument that they are entitled to qualified immunity because the law was not clearly established or because their conduct was objectively reasonable is rejected.

### D. *Plaintiff's Alleged Failure To Exhaust*

Defendants move to dismiss the majority of the Complaint on the ground that Plaintiff failed to exhaust his administrative remedies. Plaintiff contends that he

did exhaust and argues that their motion should be denied. For the following reasons, the Court concludes that Plaintiff adequately raised his claims in the prisoner appeal form he submitted to the prison and, therefore, dismissal is not warranted.

■ In order for a prisoner to sue a prison employee in a civil rights action, he must first timely exhaust his claims by submitting them to prison authorities at all levels of the administrative process. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). A failure to exhaust administrative remedies precludes a prisoner from pursuing an unexhausted claim in a § 1983 action. *See Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir.2006) (holding prisoner cannot proceed in civil rights action until administrative appeals have been exhausted).

■ The gist of Plaintiff's claims in this lawsuit is that Defendant guards forced him into a cell with another inmate, inmate Pettis, whom Plaintiff did not want to live with. Plaintiff maintains that the guards did not have authority to force him to cell with Pettis. He contends that Defendants' use of force and the application of the triangle device for ten days after the incident were in retaliation for Plaintiff's defiance of their commands. Finally, Plaintiff alleges that Defendants ignored or denied his requests for medical treatment for the injuries he sustained in the altercation with Defendant guards.

Defendant Brochu was the captain on duty at the time of the incident. Plaintiff complained to him during the transfer that the transfer was not authorized, but Brochu did not intervene. In fact, according to Plaintiff, Brochu authorized Defendants to use whatever force was necessary to force Plaintiff into the cell with Pettis. (Complaint at ¶ 21.) Plaintiff alleges in the Complaint that Brochu violated his rights when he authorized the guards to use force on him. He also complains that Brochu failed to properly train and supervise the guards.

Defendant Brochu contends that Plaintiff failed to exhaust his administrative remedies and, therefore, is barred from pursuing this civil rights action against him. (*See* Motion at 10–11; Declaration of N. Grannis, Chief of Inmate Appeals Branch.) Plaintiff disagrees. He argues in his opposition to Defendants' motion that, in the prisoner grievance form he filled out, he complained that "Captain Brochu order[ed] Sergeant Butts, Officer Martinez, Grove, Davis, and Nunez to administer whatever force is necessary to get (Brown) in the cell with inmate Pettis." (*See* Complaint, Exh. J, Inmate Appeal Form (Attachment Sheet, Page One).) According to Plaintiff, that was enough.

A review of the inmate grievance form that Plaintiff submitted shows that he did name Brochu in it and alleged that Brochu ordered the guards to use force on him. (*Id.*) Though Plaintiff did not identify Brochu as one of the employees he was lodging a "citizen's complaint" against or allege that Brochu had failed to train and supervise the other guards, naming him in the grievance and complaining about the treatment Plaintiff received from Brochu's subordinates is arguably enough to satisfy the exhaustion requirement on these claims. *See Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922–23, 166 L.Ed.2d 798 (2007) (noting prison grievance system is not intended to put prospective defendant on notice of nature and circumstances of potential lawsuit, but to allow prison to respond to perceived shortcomings). The Court also notes that, though Plaintiff argued in his opposition that he had exhausted his claim against Brochu by naming Brochu in the administrative appeal, Defendant chose not

to file a reply brief to challenge this assertion. In the absence of any argument from Brochu that naming Brochu and describing the incident was not enough, the Court will side with Plaintiff and find that he has exhausted as to Brochu.[2]

Defendant Butts, a sergeant who was also supervising the guards involved in this incident, alleges that Plaintiff failed to exhaust administrative remedies as to Plaintiff's claim that Butts failed to supervise and adequately train the guards. Plaintiff disputes this allegation and argues that Butts was included in the administrative complaint. A review of the form and the attachments supports Plaintiff's argument. On page one of the attachment sheet, Plaintiff identifies Sgt. Butts as the supervisor of the guards who used force on Plaintiff and placed him in the triangle restraint. (*See* Complaint, Exh. J, Inmate Appeal Form (Attachment Sheet, Page One).) According to Plaintiff's version of events in the administrative complaint, Sgt. Butts was present when Plaintiff was placed in the restraint and, in fact, took part in subduing Plaintiff and placing him in the restraint. (*Id.*) This appears to be enough to fulfill the exhaustion requirement. *See Jones,* 127 S.Ct. at 923. And, like Defendant Brochu, Defendant Butts has chosen not to challenge Plaintiff's argument that merely naming him was enough. For these reasons, Defendant Butts's motion to dismiss for failure to exhaust is denied.

Finally, Defendants argue that Plaintiff's claims against all Defendants for retaliation, deliberate indifference, and failure to provide medical care are also unexhausted because Plaintiff failed to include them in his administrative appeal. Plaintiff disputes this argument. He contends that he did include these claims in his administrative grievance. A review of the form and the attachments establishes that Plaintiff is right. At page three, Plaintiff complained to prison authorities that he sustained injuries as a result of the use of the triangle restraint device and requested medical attention, but the officers ignored his request. This is enough to satisfy the exhaustion requirement as to Plaintiff's claims of deliberate indifference and failure to provide medical care. As to his retaliation claim, though Plaintiff failed to use that term in penning his administrative complaint, a fair reading of the administrative complaint shows that Plaintiff was alleging throughout that the guards' use of force and the triangle restraint device was to retaliate against Plaintiff for speaking out and for refusing to comply with their orders to enter a cell with Pettis. For these reasons, these claims, too, are exhausted.

### E. *The Retaliation Claim*

Plaintiff alleges in the Complaint that Defendants' actions were in retaliation for Plaintiff's exercise of his First Amendment free speech rights, namely, his right to tell the guards that he refused to be housed with Pettis. (Complaint at ¶ 89.) Defendants have moved to dismiss this claim on

---

**2.** The meaning of exhaustion under California's administrative appeals scheme is based on the interpretation of California's regulations governing prisoner grievances. *See, e.g., Jones,* 127 S.Ct. at 922–23. The regulations provide that a prisoner can challenge any policy, action, or decision, which has a significant adverse effect upon him. Cal.Code Regs. tit. 15, § 3084.1 (2006). The regulations do not require that the prisoner name the guard or guards whom he believes wronged him, as opposed, for example, to simply setting forth the action he complains of, i.e., being placed in a triangle mechanical restraint. Cal.Code Regs. tit. 15, § 3084.1–3084.7. As such, Plaintiff's efforts to exhaust his claims by simply identifying the incident and the individuals involved are deemed adequate for purposes of this motion.

the ground that Plaintiff failed to allege that he was "chilled" as a result of Defendants' actions. For the following reasons, Defendants' motion as to this claim is granted.

A prisoner suing prison officials for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995); *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir.1994); *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1985). A prisoner must also allege that his constitutional rights were actually chilled. *Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir.2000).

Plaintiff has failed to allege that his constitutional rights were chilled. In fact, in response to Defendants' motion, Plaintiff has still not alleged that his rights were chilled but argues, instead, that, under Ninth Circuit law, an allegation of a chilling effect is no longer necessary, citing *Rhodes v. Robinson,* 380 F.3d 1123 (9th Cir.2004). The Court disagrees. Though he is correct that the Ninth Circuit implied in *Rhodes* that a prisoner was not required to allege a chilling effect to set forth a prima facie case of retaliation, *id.* at 1130, that decision was amended and superseded by the Ninth Circuit the following year, at which time the requirement that a prisoner plead and prove a chilling effect was inserted. *See Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005). Thus, to state a prima facie case for retaliation, a prisoner must allege a chilling effect. *Id.* Here, Plaintiff all but concedes that there was no chilling effect and, therefore, he cannot maintain a retaliation claim against these Defendants.[3]

**3.** Plaintiff would have a difficult time substantiating such a claim. In this court alone he

### F. Defendants' Motion To Dismiss Plaintiff's Excessive Force And Deliberate Indifference Claims Is Denied

Defendants contend that Plaintiff has failed to allege sufficiently serious harm to proceed on his excessive force and deliberate indifference claims. With regard to the excessive force claim, for example, they point out that Plaintiff has not alleged that he suffered any serious injuries, nor has he alleged that Defendants acted with malicious intent. As to the deliberate indifference claim, they contend that, even though Plaintiff did not receive medical care on the date of the incident, he could have received it later and chose not to. As explained below, both of these arguments turn on facts to which the parties dispute and, therefore, Defendants' motion to dismiss on this ground is denied.

Plaintiff has alleged in the Complaint that Defendants exerted force on him and employed a triangle restraint device that caused Plaintiff excruciating pain. (Complaint at ¶¶ 27–28.) Plaintiff has also alleged that they did so to punish him for being defiant. (Complaint at ¶ 36.) Further, Plaintiff alleged that he was injured by Defendants and that he asked for medical care on the day of the incident and on the days that followed and his requests were denied or ignored. (Complaint at ¶¶ 31, 34.) These are the only facts this Court can consider at this stage of the litigation and they certainly amount to a prima facie case of excessive force and deliberate indifference. Defendants' arguments to the contrary are rejected.

### G. Plaintiff's State Tort Claims Are Untimely

Defendants contend that Plaintiff's state tort claims should be dismissed because they are untimely. The Court agrees.

has filed seven lawsuits in the last five years.

To sue a public entity or a public employee in California, a claimant must first file an administrative tort claim with the State. Gov't Code § 945.6. Where, as here, the claim is denied, the claimant then has six months from the date of the denial to file a civil action in a court. *Id.* Prisoners are not entitled to tolling of this limitations period. *See Moore v. Twomey,* 120 Cal.App.4th 910, 914, 16 Cal.Rptr.3d 163 (2004).[4]

Plaintiff filed a tort claim with the State Victim Compensation and Government Claims Board, following the March 2003 incident he complains of here. (Complaint, Exh. I, Government Claim.) By letter dated June 6, 2003, the Board denied the claim. (Complaint, Exh. II, Denial Letter.) Under § 945.6, Plaintiff had until December 6, 2003, to file suit. He did not file this suit, however, until February 2006.[5] Thus, he was more than two years late when he filed this action and his state tort claims are barred.

Plaintiff argues that he is entitled to tolling of the statute of limitations under California Code of Civil Procedure § 352.1. Plaintiff is mistaken. This tolling provision does not apply to tort claims against the government. *Twomey,* 120 Cal. App.4th at 914, 16 Cal.Rptr.3d 163. For all these reasons, Plaintiff's state tort claims are subject to dismissal at this stage.

**III.**

**RECOMMENDATION**

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that the Court enter an order GRANTING Defendants' motion to dismiss Plaintiff's official capacity claims, retaliation claims, and state tort claims, and DENYING Defendants' motion to dismiss Plaintiff's other claims.

DATED: December 20, 2008.

---

4. Though § 945.6 contains language that suggests that prisoners are exempt from the six-month filing deadline, that language is no longer operative. *Twomey,* 120 Cal.App.4th at 914, n. 2, 16 Cal.Rptr.3d 163.

5. As a prisoner, Plaintiff is entitled to the benefit of the "mailbox rule." *See Houston v. Lack,* 487 U.S. 266, 275–76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding prisoner entitled to benefit of "mailbox rule," which provides that pleadings are "filed" as of the day they are turned over to prison staff for mail-ing to court). Though the Complaint in this case was file-stamped June 7, 2006, for statute of limitations purposes, the Court uses the date Plaintiff signed the Complaint and, presumably, delivered it to prison staff for mailing-February 3, 2006. The reason for the wide disparity between the two dates in this case is because Plaintiff's Complaint was initially rejected by the Court because it was not accompanied by a certified trust account statement, establishing that he was indigent. Plaintiff later submitted the trust account statement and was allowed to proceed.