**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DAVID STONER, individually;
UNITED STATES OF AMERICA, EX
Rel. John David Stoner,
            *Plaintiffs-Appellants,*

            and

THE STATE OF CALIFORNIA;
COUNTY OF SANTA CLARA,
                  *Plaintiffs,*

            v.

SANTA CLARA COUNTY OFFICE OF
EDUCATION; EAST SIDE UNION HIGH
SCHOOL DISTRICT; COLLEEN B.
WILCOX; JOE FIMIANI; DAVID
WONG,
            *Defendants-Appellees.*

No. 04-15984

D.C. No.
CV-03-04622-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
May 17, 2007—San Francisco, California

Filed September 7, 2007

Before: Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges, and Leonard B. Sand,* Senior District Judge.

*The Honorable Leonard B. Sand, Senior United States District Judge
for the Southern District of New York, sitting by designation.

11921

Opinion by Judge Ikuta

**COUNSEL**

John David Stoner, Sunnyvale, California, for himself.

Peter D. Keisler, Assistant Attorney General; Kevin V. Ryan, United States Attorney; Douglas N. Letter, Appellate Litiga-

tion Counsel, Civil Division, U.S. Department of Justice, Washington, D.C., as amicus curiae, by special leave of court.

Mark E. Davis and Marc J. Cardinal, Needham, Davis, Kirwan & Young LLP, San Jose, California, for the appellees.

## OPINION

IKUTA, Circuit Judge:

Under the False Claims Act ("FCA"), "[a]ny person" who, among other things, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval" is liable to the Government for a civil penalty, treble damages, and costs. 31 U.S.C. § 3729(a)(1). The FCA authorizes a private person, known as a relator, to bring a *qui tam* civil action "for a violation of section 3729 for the person and for the United States Government. . . . in the name of the Government." 31 U.S.C. § 3730(b)(1). This case requires us to decide whether a *pro se* relator may bring a *qui tam* action in federal court on behalf of the government against various actors in the California school system.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant John David Stoner brought this *qui tam* action in the United States District Court for the Northern District of California against the Santa Clara County Office of Education ("SCCOE"), his former employer, the East Side Union High School District ("ESUHSD"), and three SCCOE employees, Colleen Wilcox, Joe Fimiani, and David Wong. In the pro-

ceedings before the district court, Stoner appeared *pro se.* Although Stoner is a licensed attorney, and has been admitted to practice before this court, *see* Fed. R. App. Proc. 46(a), he is not a member of the State Bar of California, and consequently could not be admitted to membership before the district court for the Northern District of California, *see* Northern District of California, Civil Local Rule 11-1. Stoner's complaint alleged that defendants presented various fraudulent claims for payment or approval to the United States in violation of the False Claims Act ("FCA"). Specifically, he claimed that defendants falsely certified compliance with the Individuals with Disabilities Education Act to induce the government to disburse more money for certain educational programs. Stoner's complaint also raised a number of state law claims, including alleged violations of the California False Claims Act.

As required by the FCA, Stoner filed his complaint under seal and served it on the United States. *See* 31 U.S.C. § 3730(b)(2). After the United States declined to intervene, the complaint was unsealed and served on the SCCOE. The SCCOE immediately moved to dismiss the claims against it, arguing, among other things, that it was not a "person" subject to liability under the FCA. The remaining defendants joined in that motion.

The district court granted the motion to dismiss after determining that the complaint failed to state a claim under the FCA. *See* Fed. R. Civ. P. 12(b)(6). The court held that the FCA did not provide a cause of action against the SCCOE and the ESUHSD because each entity is a state agency, and thus not a "person" subject to liability under the FCA. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787-88 (2000) (holding that the FCA does not subject a state or state agency to liability in a *qui tam* action brought by a private relator). Relying on *United States ex rel. McVey v. Board of Regents of the University of California*, 165 F. Supp. 2d 1052, 1058-59 (N. D. Cal. 2001), the court

also held that Stoner could not sue the individual SCCOE employees in their personal capacities under the FCA for actions committed in the course of their official responsibilities. In addition, the court *sua sponte* raised the issue of Stoner's authority to prosecute a *qui tam* action on behalf of the United States *in propria persona* and held that Stoner could not proceed *pro se*[1] on the FCA claims. The court then declined to exercise supplemental jurisdiction over Stoner's remaining state law claims and dismissed Stoner's complaint in its entirety. Stoner filed this timely appeal. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (noting that a motion to dismiss becomes a final appealable order within the meaning of 28 U.S.C. § 1291 when the district court order disposes of all claims against all parties).[2]

## STANDARDS OF REVIEW

"A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo." *Marder*, 450 F.3d at 448. "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff can

---

[1] The phrases *in propria persona* and *pro se* are synonymous. *See* Black's Law Dictionary 1256 (8th ed. 2004); *see also Savage v. Estelle*, 924 F.2d 1459, 1460 n.1 (9th Cir. 1990) ("no legal distinction" between the phrases in the context of self-representation).

[2] Prior to oral argument in this case, Stoner filed a request for judicial notice of certain documents not part of the record on this appeal. The defendants oppose Stoner's request on the grounds that the documents submitted are unauthenticated, lack foundation, and do not satisfy the requirements of Rule 201 of the Federal Rules of Evidence. Because the documents at issue do not fall within the narrow exception to the general rule that the scope of this court's review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), Stoner's request for judicial notice is denied.

prove no set of facts in support of the claim which would entitle him to relief." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004) (internal citation omitted).

Questions of statutory interpretation and the existence of sovereign immunity are also reviewed de novo. *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1213 (9th Cir. 1996); *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004).

## DISCUSSION

### I.

We first address the question whether school districts in California, including county offices of education, are subject to *qui tam* liability under the FCA. We begin our analysis with the language of the statute itself. The FCA subjects to liability any "person" who, among other things, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). Section 3729 does not define the term "person." However, *Stevens* held that a state or state agency is not a "person" for purposes of § 3729 and, therefore, not subject to liability in *qui tam* suits brought by private parties. 529 U.S. at 787-88.

[1] In light of *Stevens*' holding, we must determine whether the SCCOE, a California county office of education, and the ESUHSD, a California school district, are state agencies. Although we have not yet considered this issue in the context of the FCA, we previously determined that a California school district and county office of education were state agencies for purposes of Eleventh Amendment sovereign immunity. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1996). The district court looked to these cases in ruling

that neither the SCCOE nor the ESUHSD was a "person" within the meaning of 31 U.S.C. § 3279.

**[2]** We agree with the district court's approach. As explained below, *Stevens* teaches that our Eleventh Amendment case law should guide our determination of whether an entity is a state agency and thus not a "person" for purposes of § 3279. *Stevens*' analysis of the word "person" in § 3279 was driven by canons of statutory construction relating to protection of the state's sovereign immunity. *See Stevens*, 529 U.S. at 781-87. Specifically, *Stevens* based its holding that neither a state nor a state agency were "persons" within the meaning of § 3279 on the following canons of statutory construction related to state sovereignty: (1) the presumption that the term "person" does not include the sovereign, *id*. at 780; (2) the rule that Congress must clearly state its intention to subject states to liability, *id*. at 781-82, 787; (3) the presumption against imposition of punitive damages on governmental entities, *id*. at 784-85; and (4) "the ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute," *id.* at 787. Applying these canons, the Court observed that "far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability," Congress expressed a contrary intent. *Id*. This conclusion was buttressed by "the doctrine that statutes should be construed so as to avoid difficult constitutional questions." *Id*. With respect to this last point, the Supreme Court explained that there was "'a serious doubt'" on the question whether an action in federal court by a *qui tam* relator against a state or a state agency would be consistent with the Eleventh Amendment, *id*. (quoting *Ashwander v. TVA*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring)), although the Court was careful to "express no view" on this issue. *Id*. In effect, the Court presumed that in enacting the FCA, Congress intended not to infringe on a state's sovereign

immunity and therefore did not make states subject to suit under the FCA.

To effectuate Congress's presumed intent, we must interpret the term "person" under § 3279 in a way that avoids suits against "state instrumentalities" that are effectively arms of the state immune from suit under the Eleventh Amendment. *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (instructing lower courts to refer to the Eleventh Amendment arm-of-the-state analysis in determining whether an entity is an agency of the state and thus not a "person" for purposes of 42 U.S.C. § 1983 (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977))). Our conclusion that we must rely on our Eleventh Amendment jurisprudence to determine whether an entity is a "person" within the meaning of § 3279 is further underlined by our post-*Stevens* holding that "states and state agencies enjoy sovereign immunity from liability under the FCA." *Bly-Magee v. California*, 236 F.3d 1014, 1017 (9th Cir. 2001); *see also United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1145 (9th Cir. 2004). Both *Bly-Magee* and *Ali* implicitly recognize that Eleventh Amendment principles guided the Supreme Court's decision in *Stevens*.

**[3]** We thus look to our Eleventh Amendment case law in determining whether the SCCOE and the ESUHSD are state agencies not subject to FCA liability under *Stevens*. We have held that a California school district and county office of education are arms of the state for purposes of Eleventh Amendment sovereign immunity. *Belanger*, 963 F.2d at 254; *Eaglesmith*, 73 F.3d at 860. Accordingly, we must conclude that neither the SCCOE nor the ESUHSD is a "person" subject to liability under § 3279 of the FCA. *Stevens*, 529 U.S. at 781-87. By the same reasoning, Stoner's *qui tam* action against the SCCOE and the ESUHSD is barred by the Eleventh Amendment. *Ali*, 355 F.3d at 1145; *Bly-Magee*, 236 F.3d at 1017.

Stoner asks us to revisit *Belanger* and *Eaglesmith* in light of *Regents of the University of California v. Doe*, 519 U.S. 425 (1997), which was decided by the Supreme Court five years after *Belanger*. He contends that after *Regents*, a state agency is not shielded by the state's sovereign immunity unless the state is directly liable for any money judgment rendered against the agency. We disagree. *Regents* holds that the Eleventh Amendment may bar a lawsuit against a state agency in circumstances where the state is legally liable for a judgment against that agency, even if the state is indemnified against that liability by a third party. *Id.* at 426. But nothing in *Regents* requires us to depart from the well-established Eleventh Amendment principle that a governmental entity may be an arm of the state protected by sovereign immunity where the state is functionally liable, even if not legally liable, on money judgments against the state entity. *See, e.g.*, *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994) ("Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency." (internal quotation marks omitted)); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (The Eleventh Amendment "protect[s] the state treasury from liability that would have had *essentially the same practical consequences* as a judgment against the State itself." (emphasis added)). In decisions issued after *Regents*, we held that California school districts and county offices of education are entitled to the state's Eleventh Amendment immunity, due in part to their statutorily mandated relationship with the state, which (among other things) makes the state treasury unconditionally liable to make up any budgetary shortfall encountered by either entity as a result of an adverse judgment. *See Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 780-81 (9th Cir. 2005); *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1183 (9th Cir. 2003); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1042 (9th Cir. 2003); *Eason v. Clark*

*County Sch. Dist.*, 303 F.3d 1137, 1142 (9th Cir. 2002). These cases make clear that *Belanger* and *Eaglesmith* remain binding authority of this circuit following *Regents*.

**[4]** Following *Belanger* and *Eaglesmith*, therefore, we hold that the SCCOE and the ESUHSD are arms of the state, and therefore not "persons" subject to *qui tam* liability under the FCA. Stoner thus has no statutory authority to bring an FCA claim against the SCCOE and the ESUHSD. *See* 31 U.S.C. § 3729(a); *Stevens*, 529 U.S. at 787-88. By the same token, the Eleventh Amendment poses an independent bar to *qui tam* action against either entity. *Bly-Magee*, 236 F.3d at 1017. Accordingly, the district court properly dismissed Stoner's FCA claims against both entities.

## II.

We next turn to the district court's dismissal of the FCA claims asserted against the three individual SCCOE employees named in Stoner's complaint. While Stoner's complaint does not specify the capacity in which he was suing Wilcox, Fimiani, and Wong, "[t]he course of proceedings " in this case indicates that Stoner was suing these employees in their individual, as well as official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985))). With respect to the official capacity claims, the district court held that the individually named defendants could not be sued for damages in their official capacities because such a suit would, in effect, be against the state. *See Will*, 491 U.S. at 71 (concluding that a state official sued in his or her official capacity for money damages is not a "person" subject to suit under 42 U.S.C. § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

office," and for this reason "is no different from a suit against the State itself" ). The parties do not challenge this ruling and we express no opinion on the merits of the district court's conclusion.

[5] The district court also held that Stoner failed to state an FCA claim against the individual defendants in their personal capacities because Stoner could not allege that the defendants' actions exceeded the scope of their official responsibilities. As explained below, this was an error. The plain language of the FCA subjects to liability "any person" who, among other things, knowingly submits a false claim or causes such a claim to be submitted to the United States. 31 U.S.C. § 3729. Although the FCA does not define the term "person," the Supreme Court has made clear that the term includes "natural persons." *Cook County v. United States ex rel. Chandler,* 538 U.S. 119, 125 (2003); *see also* 1 U.S.C. § 1 (defining the term "person" for purposes of "determining the meaning of any Act of Congress" as including an individual). Therefore, state employees sued in their personal capacities are "persons" who may be subject to liability for submitting a false claim to the United States. *Cf. Hafer v. Melo*, 502 U.S. 21, 27 (1991) (concluding, in context of case filed pursuant to 42 U.S.C. § 1983, that "[a] government official in the role of personal-capacity defendant . . . fits comfortably within the statutory term 'person' ").

[6] To state a claim against Wilcox, Fimiani, and Wong in their personal capacities, Stoner need show only that the individual employees "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). Stoner's complaint alleged that Wilcox, Fimiani, and Wong knowingly presented or caused to be presented false or fraudulent statements to the United States Department of Education to obtain federal funds for various educational programs. If true, these allegations are sufficient to state a claim for personal liability under 31

U.S.C. § 3729(a)(1). Stoner need not allege that the individual defendants personally profited from such false submissions. Nothing in § 3729(a)(1) requires the person knowingly making a false submission to obtain a personal benefit from the wrongful act.

In dismissing the FCA claims against Wilcox, Fimiani, and Wong, the district court relied on *McVey*, 165 F. Supp. 2d at 1058-59, which held that "[u]nder the FCA, a state official is immune from suit for actions taken in his position," even where it is alleged that the official abused his authority. *Id*. at 1059; *see also United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 937 (8th Cir. 2001) (holding that state official could not be sued under the FCA in his individual capacity unless he was acting "outside his official duties" when he took the action alleged to violate the FCA (quoting *Bly-Magee*, 236 F.3d at 1016)). We disagree with *McVey* and *Gaudineer* to the extent the reasoning of these cases cannot be reconciled with the plain language of the statute.

Our conclusion is supported by the Supreme Court's decision in *Hafer*, which rejected the argument that state officials may not be held personally liable under 42 U.S.C. § 1983 for actions taken in their official capacities. 502 U.S. at 27-31. The Court reasoned that to hold otherwise would, in effect, "absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities." *Id*. at 28. The Court noted that such absolute immunity extends only to a very limited class of officials, "including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions." *Id*. at 29 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

[7] *Hafer*'s reasoning is equally applicable to our interpretation of the FCA. The individual defendants named in Stoner's complaint do not fall into the narrow class of officials

entitled to absolute immunity. Were we to interpret § 3729 to preclude an action against state officials in their personal capacities, our holding would be tantamount to a grant of absolute immunity under the FCA to state officials for any actions taken in the course of their governmental responsibilities. *See Hafer*, 502 at 27-29. Such an interpretation finds no support in the statutory language. It is also contrary to the principles of the Supreme Court's well-established public employee immunity jurisprudence. *Id.* at 29 (citing *Harlow*, 457 U.S. at 807); *see also United States ex rel. Burlbaw v. Regents of N.M. State Univ.*, 324 F. Supp. 2d 1209, 1215 (D.N.M. 2004). We decline to adopt an interpretation of § 3729 that is at odds with the statutory language and clear guidance from the Supreme Court. We therefore hold that state employees may be sued in their individual capacities under the FCA for actions taken in the course of their official duties.[3]

[8] The individual defendants challenge this straightforward conclusion by contending that it permits an end-run around *Stevens* and the Eleventh Amendment. They argue that a relator precluded from asserting a *qui tam* action against a state agency could bring the same action against individual state employees in their personal capacity. We find this argument unpersuasive. An individual capacity suit for damages against state officials alleged to have personally violated § 3729 does not implicate the principles of state sovereignty protected by *Stevens* and our Eleventh Amendment jurisprudence because such an action seeks damages from the individual defendants rather than the state treasury. *See Alden v. Maine*, 527 U.S. 706, 757 (1999). Nor does the fact that a state may choose to indemnify the employees for any judg-

---

[3]Of course, state employees sued under the FCA may be entitled to qualified immunity. Any personal immunity defenses that may be available to Wilcox, Fimiani, and Wong, including the defense of qualified immunity, are not before us in this stage of the proceedings where the defendants have not yet filed an answer.

ment rendered against them bring the Eleventh Amendment into play. *See Demery v. Kupperman*, 735 F.2d 1139, 1147-1148 (9th Cir. 1984) (state may not impart sovereign immunity, and thereby prevent vindication of federal rights in federal court, by adopting an indemnification policy). As the Supreme Court explained, "the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.' " *Hafer*, 502 U.S. at 27 (quoting *Will*, 491 U.S. at 71). Where a plaintiff seeks to hold individual employees personally liable for their knowing participation in the submission of false or fraudulent claims to the United States government, the state is not the real party in interest, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984), and the Eleventh Amendment poses no barrier to such a suit. *Hafer*, 502 U.S. at 30-31.

**[9]** To summarize, we hold that state officials, sued for damages in their individual capacities, are "persons" within the meaning of 31 U.S.C. § 3729. The Eleventh Amendment does not bar such suits. Accordingly, the district court erred in holding that Stoner had failed to state a claim under § 3729 against Wilcox, Fimiani, and Wong, in their personal capacity.

## III.

**[10]** Finally, we must address the district court's determination that Stoner could not proceed *pro se* on this FCA action. As noted above, although Stoner is an attorney, he was not a member admitted to practice before the district court as a matter of the court's local rules. It has long been established that an individual wanting to prosecute or defend an action in federal court must be represented by a lawyer admitted to practice before that court, unless such individual is permitted to proceed *pro se* under 28 U.S.C. § 1654 or other federal law, *see C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-98 (9th Cir. 1987), or is himself an attorney granted *pro hac vice* admission. Stoner did not secure *pro hac vice* admis-

sion, but sought to proceed *pro se*. The general *pro se* provision set forth in 28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." While this provision allows Stoner to prosecute his own actions *in propria persona*, that right is personal to him, and absent some other statutory authorization, Stoner has no authority to prosecute an action in federal court on behalf of others than himself. *C.E. Pope Equity Trust*, 818 F.2d at 697.

However, this is exactly what Stoner seeks to do. Stoner has brought this action pursuant to 31 U.S.C. § 3730(b)(1), which provides that a "person," known as the relator, "may bring a civil action for a violation of section 3729 for the person *and for the United States Government* . . . in the name of the Government." 31 U.S.C. § 3730(b)(1) (emphasis added). As this court has explained, "the entire purpose of the FCA's *qui tam* provisions is to employ the help of individuals to uncover fraud against the government." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993). To this end, the FCA motivates "a private individual [to] bring suit in federal court *on behalf of the United States*" by effecting a partial assignment of the government's damages claim to the relator. *Stevens*, 529 U.S. at 768 (emphasis added).

**[11]** Although the partial assignment allows the relator asserting the government's injury to satisfy the requirements of Article III standing, it does not transform a *qui tam* action into the relator's "own case" for purposes of § 1654. The FCA makes clear that notwithstanding the relator's statutory right to the government's share of the recovery, the underlying claim of fraud always belongs to the government. *See* 31 U.S.C. § 3730(c)(5) (providing that "the Government may elect to pursue *its claim* through any alternate remedy" (emphasis added)). Accordingly, where the government chooses not to intervene, a relator bringing a *qui tam* action for a violation of § 3729 is representing the interests of the government and prosecuting the action on its behalf. *See* 31

U.S.C. § 3730(b)(1); *see also United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 882 (9th Cir. 1997) ("[T]he 'United States is the real party in interest in any False Claims Act suit, even when it permits a *qui tam* relator to pursue the action on its behalf.' " (quoting *United States ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 50 (4th Cir. 1992))); *Kelly*, 9 F.3d at 743 ("The express language of the FCA gives relators the right to bring suit *on behalf of the government*." (emphasis added)). Nor does the FCA "support a finding that the government and the relators can pursue their interests . . . separately," *Schimmels*, 127 F.3d at 884, such that relators could bring their "own case" without binding the government. Rather, the United States "is bound by the relator's actions" for purposes of res judicata and collateral estoppel. *Id.*; *see also United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D.D.C. 2003); *United States ex rel. Schwartz v. TRW Inc.*, 118 F. Supp. 2d 991, 996 (C.D. Cal. 2000). Because *qui tam* relators are not prosecuting only their "own case" but also representing the United States and binding it to any adverse judgment the relators may obtain, we cannot interpret § 1654 as authorizing *qui tam* relators to proceed *pro se* in FCA actions.

**[12]** Because the general *pro se* provision, 28 U.S.C. § 1654, does not authorize Stoner to proceed *pro se* on behalf of the government, Stoner must identify an alternate source of authority granting him this privilege. This Stoner has failed to do. The FCA itself does not authorize a relator to prosecute a § 3729 violation *pro se*. While the FCA gives a relator the "right to conduct the action," 31 U.S.C. § 3730(c)(3), Stoner can point to no language enabling a relator to conduct the action without a licensed attorney. Given the fact that Congress did not expressly authorize a *qui tam* relator to proceed *pro se* when acting on behalf of the United States, it "must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in

court for anyone other than himself." *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951).

The Supreme Court's recent decision in *Winkelman v. Parma City School District*, 127 S. Ct. 1994 (2007), does not suggest a contrary conclusion. *Winkelman* considered whether the parents of a child covered by the Individuals with Disabilities Education Act ("IDEA") could proceed *pro se* in federal court to enforce IDEA's guarantee of a free appropriate public education for their child. *Id*. at 2000-05. The central question in *Winkelman* was whether IDEA grants parents the same independent substantive right to a free appropriate public education as it does their child, and thus whether unrepresented parents would be proceeding on their own behalf or on behalf of their child in an action to enforce this right in federal court. *Id*. at 1998. After examining IDEA's statutory scheme, the Court held that the parents could bring such an action *pro se* pursuant to 28 U.S.C. § 1654 because IDEA gives the parents their own "independent, enforceable" right to the substantive adequacy of their child's education. *Id*. at 2005.

While *Winkelman* reaffirms that *pro se* plaintiffs are entitled to enforce their own independent rights in federal court under § 1654, it has no direct application here because the FCA makes clear that a relator brings a *qui tam* suit on behalf of the government. Unlike IDEA, which allows parents to proceed on their own behalf to vindicate their substantive right to a free appropriate public education for their child, the substantive right underlying the FCA action is the government's right not to be defrauded. *See Stevens*, 529 U.S. at 771 (The relator "is suing to remedy an injury in fact suffered by the United States."). The relator's interest in the lawsuit is limited to certain procedural guarantees, in addition to the "bounty" the relator will receive for successfully assisting the government in vindicating the government's substantive rights. *See Stevens*, 529 U.S. at 772. Stoner's reliance on *Winkelman* in the context of the FCA is thus misguided.

**[13]** Our conclusion that a *pro se* relator cannot prosecute a *qui tam* action on behalf of the United States is consistent with the decisions of other circuits to have addressed the issue. *See United States ex rel. Lu v. Ou*, 368 F.3d 773, 775-76 (7th Cir. 2004); *see also Safir v. Blackwell*, 579 F.2d 742, 745 n.4 (2d Cir. 1974); *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951).

In an effort to distinguish these cases, Stoner argues that he is not truly proceeding *pro se* because the FCA grants the government a degree of oversight over the action, *see* 31 U.S.C. § 3730(c)(3). We are not persuaded. Unless it intervenes or moves to dismiss, the United States has little control over the conduct of the action. *See generally* 31 U.S.C. § 3730. For purposes of 28 U.S.C. § 1654, an unrepresented relator is not transformed into a relator represented by counsel merely because the government has some oversight of the case. The strong policy considerations underlying the general rule that parties may not represent the interests of others in federal court support our conclusion that the government's minimal oversight does not overcome Stoner's *pro se* status. In cases as complicated as *qui tam* actions, a licensed attorney is best equipped to present the complex legal and factual issues involved and "[a] federal court rightly expects a lawyer to represent a litigant." *C.E. Pope Equity Trust*, 818 F.2d at 697.

**[14]** We therefore agree with the district court that Stoner is not entitled to proceed *pro se* in his action. In the dismissal order from which this case arises, the district court ruled that Stoner would be given a period of time in which to secure counsel if this action otherwise survived the defendants' motion to dismiss. Because we conclude that Stoner has stated a claim under the FCA against the individual defendants, we remand this case to the district court with instruction to give Stoner reasonable time to find counsel or, in the alternative, obtain *pro hac vice* admission. If Stoner fails to retain counsel

or obtain *pro hac vice* admission, the district court should dismiss this action, without prejudice to the government.

## IV.

For the reasons discussed above, we reverse the district court's ruling dismissing the FCA claims against the individual defendants named in Stoner's complaint.[4] We otherwise affirm the rulings of the district court. We remand this case for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED** in part; **REVERSED** in part; **REMANDED**.

---

[4]The defendants also contend that Stoner's complaint fails to allege an actionable false certification upon which federal funding was conditioned. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit."). The district court did not address this argument and we decline to resolve it here without giving the district court the opportunity to do so in the first instance. *See Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) ("Generally, we do not consider an issue not passed upon below." (internal quotation marks omitted)).