**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES EX REL. FAWN CAIN; TANYA ARCHER, Relator; SANDI OVITT, Relator, *Plaintiffs-Appellants*, <br><br> v. <br><br> SALISH KOOTENAI COLLEGE, INC.; SALISH KOOTENAI COLLEGE FOUNDATION; ROBERT FOUTY; JIM DURGLO; RENE PEIRRE; ELLEN SWANEY; LINDEN PLANT; TOME ACEVEDO; ZANE KELLY; ERNEST MORAN; SALISH KOOTENAI COLLEGE BOARD OF DIRECTORS; DOES, 1–10, *Defendants-Appellees*, <br><br> CONFEDERATED SALISH AND KOOTENAI TRIBES, *Appellee-Intervenor*. | No. 15-35001 <br><br> D.C. No. 9:12-cv-00181-BMM <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted April 3, 2017
Seattle, Washington

Filed July 10, 2017

Before: Alex Kozinski and William A. Fletcher, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Judge Kozinski

## SUMMARY[**]

### False Claims Act

The panel reversed the district court's dismissal of the
complaint in a *qui tam* action brought by former employees
of Salish Kootenai College, Inc., alleging that the College
violated the False Claims Act by knowingly providing false
progress reports on students in order to keep grant monies
coming from the Department of Health and Human Services
and the Indian Health Service.

The False Claims Act permits suits against any "person"
who defrauds the government by knowingly presenting a
false or fraudulent claim.

---

[*] The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

The district court held that the College was an arm of the Confederated Salish Kootenai Tribes ("Tribe") that shared the Tribe's sovereign immunity.

The panel held that Indian tribes were entitled to the same interpretative presumption as States, which are excluded from the term "person" under the False Claims Act. The panel concluded that the Tribe, like other federally recognized Indian tribes, was presumptively excluded from the term "person."

Turning to the question whether the College functioned as an arm of the Tribe and thereby shared the Tribe's sovereign status, the panel held that the proper standard for answering the question was the test in *White v. University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014). The panel remanded so that the district court could apply the *White* factors. The panel also directed the district court to allow appropriate discovery before determining whether the College was an arm of the Tribe under *White*.

---

## COUNSEL

Trent N. Baker (argued), Jason A. Williams, and David B. Cotner, Datsopoulos MacDonald & Lind P.C., Missoula, Montana, for Plaintiffs-Appellants.

Martin S. King (argued), Jori Quinlan, and Matthew J. Cuffe, Worden Thane P.C., Missoula, Montana, for Defendants-Appellees.

John Harrison (argued) and Rhonda R. Swaney, Tribal Legal Department, Pablo, Montana, for Appellee-Intervenor.

## OPINION

KOZINSKI, Circuit Judge:

The False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, permits suits against "any person" who defrauds the government by "knowingly present[ing] . . . a false or fraudulent claim for payment or approval." *Id.* § 3729(a)(1)(A). We consider whether Salish Kootenai College, Inc. is a "person" subject to suit under the FCA.

## FACTS

Plaintiffs are former employees of Salish Kootenai College, Inc. (the College). They brought a *qui tam* action against the College, the Salish Kootenai College Foundation (the Foundation), and eight of the College's board members, alleging that defendants violated the FCA and Montana law. Specifically, they claim that defendants knowingly provided false progress reports on students in order to keep grant monies coming from the Department of Health and Human Services and the Indian Health Service.

After the United States declined to intervene pursuant to 31 U.S.C. § 3730(b)(4)(B), defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Defendants argued, among other things, that the suit was barred by tribal sovereign immunity.

The district court dismissed the complaint against the College and the Foundation with prejudice. The court held that the College was an arm of the Confederated Salish Kootenai Tribes (the Tribe)[1] that shared the Tribe's sovereign immunity, and that neither the Tribe nor Congress waived the College's immunity. As for the Foundation, the district court dismissed the suit for failure to state a claim. The district court further determined that the board members were protected by sovereign immunity because they had been sued in their official capacities.

This appeal followed. Plaintiffs do not challenge the district court's dismissal of the claims against the Foundation or its finding that the board members were sued in their official capacities.[2] Therefore, we limit our review to the portion of the district court's order pertaining to the College.[3]

## DISCUSSION

To begin with, we disagree with the district court's framing of the central question. The central question in this

---

[1] The Tribe participated in the district court proceeding as amicus curiae. After plaintiffs appealed, the Tribe petitioned to intervene and we granted the petition.

[2] The district court granted plaintiffs leave to amend their claims against the board members.

[3] Plaintiffs concede that their claims against the College's board members in their official capacities stand or fall with their claims against the College. *See Cook* v. *AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (holding that "tribal immunity protects tribal employees acting in their official capacity and within the scope of their authority").

case is whether the College is a "person" within the meaning of the FCA. The district court instead focused on whether the College enjoyed tribal immunity and, if so, whether that immunity was voluntarily waived.

To be sure, the two questions are linked. As we explain below, whether a particular entity is a "person" under the FCA is tied to whether that entity enjoys sovereign immunity. But the statutory interpretation question is logically antecedent to the question of sovereign immunity. Whether the College is an arm of the Tribe and therefore shares the Tribe's sovereign immunity is relevant only because our precedent tells us that sovereign entities are presumptively excluded from the term "person." *See infra* p. 7.

This means we need not decide whether the College voluntarily waived its sovereign immunity.[4] If the College is a sovereign entity to which Congress didn't intend the FCA to apply, the College cannot make the FCA apply to itself by voluntarily waiving its sovereign immunity; if the College is not a sovereign entity and therefore is a "person" under the FCA, it has no sovereign immunity to waive.

With this clarification, we now consider (1) whether the Tribe is a "person" under the FCA and (2) whether the College is an arm of the Tribe that shares the Tribe's status for purposes of the FCA. We answer the first question in the negative and remand for further jurisdictional factfinding on the second question.

---

[4] That said, the Tribe's intent to share its sovereign immunity with the College is one of five factors that we consider when deciding whether the College is an arm of the Tribe. *See infra* p. 13.

# I

In *Vermont Agency of Natural Resources* v. *U.S. ex rel. Stevens*, the Supreme Court concluded that sovereign States were excluded from the term "person" under the FCA. 529 U.S. 765, 787 (2000).  In reaching this conclusion, the Court relied on its "longstanding interpretive presumption that 'person' does not include the sovereign."  *Id.* at 780 (citations omitted).  Acknowledging that "[t]he presumption is . . . not a hard and fast rule of exclusion," the Court nonetheless held that the presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary."  *Id.* at 781 (citations and internal quotation marks omitted).  After examining the historical context and statutory scheme, the Court held that the FCA, "far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability, indicate[s] quite the contrary."  *Id.* at 787.

The Court's reasoning in *Stevens* is equally applicable here.  Although we no longer consider tribal sovereignty absolute, we continue to recognize Indian tribes as sovereign entities.  *See Nevada* v. *Hicks*, 533 U.S. 353, 361 (2001) ("Though tribes are often referred to as sovereign entities, it was long ago that the Court departed from Chief Justice Marshall's view that the laws of [a State] can have no force within reservation boundaries." (citation and internal quotation marks omitted)); *see also Kiowa Tribe of Okla.* v. *Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *Okla. Tax Comm'n* v. *Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991).  Thus, the Tribe, like other federally recognized Indian tribes, is presumptively excluded from the term "person."  *See, e.g., Inyo County* v. *Paiute-*

*Shoshone Indians*, 538 U.S. 701, 711–12 (2003) (holding that a tribe was not a "person" who could bring a § 1983 action). Nothing in the FCA's text or legislative history overcomes this presumption.   *See Stevens*, 529 U.S. at 783–86 (discussing features of the FCA's statutory scheme that suggest governmental entities are not subject to *qui tam* liability).   Tribes may be "domestic dependent nations," *Cherokee Nation* v. *Georgia*, 30 U.S. 1, 17 (1831), but "are sovereigns nonetheless," and "something more than mere use of the word 'person'" is required to "demonstrate the federal intent to authorize unconsented private suit against them," *Stevens*, 529 U.S. at 780 n.9.

Some features of the FCA that the Court discussed in *Stevens* were specific to States.  For example, the Court relied on the fact that the FCA elsewhere explicitly defined "person" to include States for purposes of that section.  *Id.* at 783–84 (citations and footnote reference omitted).  The Court also found support for its conclusion in a parallel statutory scheme that explicitly left States out of its definition of "persons."  *Id.* at 786.  These features merely provide reasons for affirming the presumption that the term "person" doesn't include States.   They don't change the fact that the presumption applies equally to sovereign tribes.  *See United States* v. *Menominee Tribal Enters.*, 601 F. Supp. 2d 1061, 1067–68 (E.D. Wis. 2009).

That Indian tribes are entitled to the same interpretive presumption as States is further supported by the Court's holding in *Cook County* v. *U.S. ex rel. Chandler*, 538 U.S. 119 (2003).  The Court found that when the FCA was first enacted, municipalities like private corporations were presumed to be persons within the meaning of § 3729.  *Id.* at

125–27.  Because neither the historical context nor any subsequent statutory amendments provided reason to displace that understanding, the Court held that municipalities are subject to suit under the FCA.  *Id.* at 127–34.  The key distinction that drove the Court to apply opposite presumptions in *Stevens* and *Chandler* was the municipality's ability to sue and be sued.  *Id.* at 125–26 (noting that "municipal corporations and private ones were . . . treated alike in terms of their legal status as persons capable of suing and being sued." (citation omitted)).  In this respect, Indian tribes are analogous to States.  Like States, Indian tribes are immune from suits unless their immunity is waived or abrogated by Congress.  *Compare Kiowa Tribe of Okla.*, 523 U.S. at 754 (recognizing that tribes are presumptively immune), *and Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 238 (1985), *superseded by statute as stated in Lane* v. *Pena*, 518 U.S. 187, 198 (1996) (recognizing that states are presumptively immune), *with N. Ins. Co. of N.Y.* v. *Chatham County*, 547 U.S. 189, 193 (2006) (refusing to extend sovereign immunity to counties).  Therefore, it makes ample sense that we apply to Indian tribes the same interpretive presumption that the Court applied to States in *Stevens*.  Applying this presumption, we cannot hold that the Tribe is a "person" subject to suit under the FCA.  The statute doesn't once mention tribes, hardly an "affirmative showing" that Congress intended to include them in the term "person." *Stevens*, 529 U.S. at 781.

Plaintiffs point to *Donovan* v. *Coeur d'Alene Tribal Farm*, which held that federal statutes of general applicability are presumed to apply to Indian tribes unless one of three exceptions is satisfied.  751 F.2d 1113, 1115–16 (9th Cir. 1985).  We have affirmed the continued validity of this

presumption post-*Stevens*.  *See Consumer Fin. Prot. Bureau*
v. *Great Plains Lending, LLC*, 846 F.3d 1049, 1053–54 (9th
Cir. 2017).  However, our conclusion that the FCA was not
intended to apply to Indian tribes "forecloses the argument
that [the FCA] is of general applicability vis-a-vis the
[t]ribe[s]."  *Miller* v. *Wright*, 705 F.3d 919, 927 (9th Cir.
2013).  Our decision turns on the meaning of the term
"person."  If that term doesn't include Indian tribes, the FCA
cannot be a statute of general applicability.

## II

The question remains whether the College functions as an
arm of the Tribe and therefore shares the Tribe's sovereign
status.  Contrary to the decision below, *Smith* v. *Salish
Kootenai College*, 434 F.3d 1127 (9th Cir. 2006) (en banc),
doesn't control this question.  In *Smith*, we were considering
whether the Tribal Court had jurisdiction over tort claims
brought by a non-tribal member against the College.  *Id.* at
1128.  *Smith* was not deciding whether the College is a
sovereign entity.  That the *Smith* court drew upon several
cases discussing tribal sovereign immunity is insufficient to
make *Smith* controlling precedent in this context.  *See id.* at
1133 ("Whether an entity is a tribal entity depends on the
context in which the question is addressed." (citation
omitted)); *cf. Kiowa Tribe of Okla.*, 523 U.S. at 760 ("The
doctrine of sovereign immunity is an amalgam of two quite
different concepts, one applicable to suits in the sovereign's
own courts and the other to suits in the courts of another
sovereign." (Stevens, J., dissenting) (citation and internal
quotation marks omitted)).

*Smith* was also grounded in the record of that case.  The status of the College, either for "purposes of civil tribal court jurisdiction," *Smith*, 434 F.3d at 1135, or for purposes of the FCA, is a mixed question of law and fact.  Even if we were considering the same question as the *Smith* court, a different factual record could lead to a different conclusion.  No matter how extensive the record in *Smith*, the College cannot knock out plaintiffs' suit by mere citation to *Smith*.

In any event, we have already adopted the proper standard for answering this question.  Under *White* v. *University of California*, "whether an entity is entitled to sovereign immunity as an arm of the tribe" turns on several factors, "including: (1) the method of creation of the [entity]; (2) [its] purpose; (3) [its] structure, ownership, and management, including the amount of control the tribe has over the entit[y]; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entit[y]."  765 F.3d 1010, 1025 (9th Cir. 2014) (internal quotation marks omitted).

Plaintiffs argue that the *White* test is inapposite because *White* wasn't an FCA case.  They argue we should instead apply the "arm of the state" analysis from *Stoner* v. *Santa Clara County Office of Education*, 502 F.3d 1116, 1122–23 (9th Cir. 2007).  *Stoner* primarily turns on whether the State is directly or functionally liable for monetary judgments against the purported state agency.  *Id.*; *see also Belanger* v. *Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992) ("The most crucial question . . . is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." (citations and internal quotation marks omitted)).

Our reasoning in *Stoner* undermines plaintiffs' argument. In *Stoner*, we considered whether a California county office of education and a California school district were state agencies that were excluded from the term "person" within the meaning of the FCA.  502 F.3d at 1121.  We held that "our Eleventh Amendment case law should guide [this] determination" because "*Stevens*'[s] analysis of the word 'person' in § 3729 was driven by canons of statutory construction relating to protection of the state's sovereign immunity." *Id.* (citing *Stevens*, 529 U.S. at 781–87).  In other words, we held that whether a state entity is covered by the FCA depends on whether that entity shares the State's sovereign immunity.  Accordingly, to answer whether the College is covered by the FCA, we should apply a test for determining whether the College shares the Tribe's sovereign immunity.  The *White* test does precisely that.

It is of no moment that *White* wasn't an FCA case.  *White* was about whether the Native American Graves Protection and Repatriation Act abrogated tribal sovereign immunity and whether that immunity extended to the tribe's repatriation committee.  765 F.3d at 1023–25.  Similarly, the issue here is whether Congress intended the FCA to apply to tribal sovereigns and whether the Tribe's sovereign immunity extends to the College.

It may seem somewhat arbitrary to apply different tests for determining whether an entity is an arm of a state than for determining whether an entity is an arm of a tribe.  But this is the product of our unusual history.  Our country has two different types of domestic sovereigns: States and Indian tribes.  While they are both sovereigns, their respective sovereign immunities differ in scope.  Unlike States, Indian

tribes were not at the Constitutional Convention and the Eleventh Amendment doesn't apply to them.  *See Kiowa Tribe of Okla.*, 523 U.S. at 756.  To determine the reach of tribal immunity using Eleventh Amendment case law would be anachronistic.

Having concluded that *White* provides the appropriate test for determining whether the College is an arm of the Tribe, we remand so that the district court may apply the *White* factors.  There's one last wrinkle:  The district court denied plaintiffs additional jurisdictional discovery because it believed that *Smith* controlled the result and further discovery wouldn't make any difference.  But information that is relevant under *White* remains to be discovered.[5]  On remand, the district court shall allow appropriate discovery before determining whether the College is an arm of the Tribe under *White*.

**REVERSED AND REMANDED.**

---

[5] The record seems silent, at least, as to the last of the *White* factors. During oral argument, the College and the Tribe both represented to us that there are documents that would show the financial arrangements between the two entities.  In fact, the College attempted to supplement the record with one such document by way of a motion for judicial notice. We deny that motion as moot.